**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

ALICE ENGLISH, THE ESTATE OF
WILLIE C. ENGLISH, JR., DECEASED,
BY AND THROUGH HIS NEXT FRIEND
AND LEGAL REPRESENTATIVE, ALICE
ENGLISH, ADMINISTRATOR OF THE ESTATE
OF WILLIE C. ENGLISH, JR.                                    PLAINTIFFS

VERSUS                                     CIVIL ACTION NO. 4:06CV215-P-S

CITY OF GREENWOOD, MISSISSIPPI
GREENWOOD POLICE DEPARTMENT,
CHIEF RONNIE L. WHITE, OFFICIALLY
AND IN HIS INDIVIDUAL CAPACITY,
SERGEANT L.V. ARCHIE, OFFICIALLY
AND IN HIS INDIVIDUAL CAPACITY                               DEFENDANTS

**MEMORANDUM OPINION**

This cause is before the Court on the defendants' Motion for Summary Judgment [57]. The Court, having reviewed the motions, the responses, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND[1]

The present litigation developed out of the death of Willie C. English, Jr. while in the custody of the City of Greenwood's Police Department. A chronology of events detailing English's arrest, detention and, ultimately, his death are set forth hereafter.

On December 22, 2003, Greenwood Police Chief Ronnie L. White received a telephone call from a local pharmacist reporting an attempt to present a forged prescription. In response to the call,

---

[1] As is required in ruling on a motion for summary judgment, the facts are stated in the light most favorable to the plaintiff.

Chief White dispatched officers from the narcotics division to the pharmacy. The officers' investigation revealed an individual's effort to obtain Lorcet, a narcotic painkiller, using pages from a prescription pad stolen from a Memphis physician.[2] When English returned to pick up the fraudulent prescription, the officers arrested him; he was later charged with obtaining controlled substances by fraud in violation of Mississippi Code Annotated § 41-29-144.

The officers transported English to the Police Department. Sergeant Deetrice Bedell handled English's booking; as part of the process, he completed a medical screening form on English. English informed Bedell he was a diabetic and he took medication; English also provided Bedell with his wife's contact information.

Around mid-afternoon, Sergeant Bedell telephoned English's wife, Alice English. He informed her of the charges against her husband and inquired about English's health. Mrs. English confirmed her husband was a diabetic and related information pertaining to his numerous other medical ailments. At approximately 6:00 p.m., Sergeant Bedell placed a second call to Mrs. English. At that time, Bedell permitted English to speak with his wife. English asked her to bring his medications to the jail and retrieve his automobile.[3]

Mrs. English arrived at the Police Department just before 8:00 p.m. She gave a uniformed officer a Ziploc bag containing her husband's medications, including insulin injections. Mrs. English also enclosed detailed written instructions on when the medication was to be given. She then signed a receipt for her husband's vehicle, accepted the keys and drove home.

---

[2] The individual in question was later determined to be Willie C. English, the decedent.

[3] Sergeant Bedell also informed Mrs. English her husband had a court appearance the following day.

The following day, December 23, 2003, Mrs. English telephoned the Police Department. Sergeant Bedell returned her call and gave her instructions about posting bond for her husband. Mrs. English arrived later that day to post bond only to learn she did not have enough cash to post bail because Sergeant Bedell had been mistaken regarding the amount of the bond. She departed the police station and English remained in custody.

Two days later, on the afternoon of December 25, 2003, Jailer James Blackshire, Jr. informed Shift Sergeant Marvin Hammond that English was complaining of a bleeding ulcer and needed medical treatment. On Sergeant Hammond's order, dispatch contacted Officer Jon Summerville to transport English to the Greenwood Leflore Hospital.

Officer Summerville arrived at the jail at approximately 3:00 p.m. English walked on his own from the cell block to the elevator and from there to the patrol car. While driving to the hospital, Summerville asked English why he needed to go to the hospital; English replied that his stomach hurt. Upon arrival at the hospital, English walked into the Emergency Room with Officer Summerville and waited to be seen by a triage nurse.[4]

While waiting in the triage area, English walked unassisted to the restroom. He also walked to triage after being called by registered nurse Franco Chua. Chua attempted an initial assessment of English's condition. He failed to respond to Chua's request to weigh him; ultimately, he had to be assisted to the scales and back to his chair. After regaining his seat, he slumped over several times and Chua and the older police officer pulled him upright again. Although Chua successfully elicited information regarding English's age, chief complaint, a description of his symptoms and an

---

[4] Another officer was with English and Summerville; his identity is not known. For ease of reference, he will be referred to as "the older officer."

admission that he was diabetic, English was unresponsive to Chua's other questions.[5] Despite English's characterization of his pain as severe, Chua noted the effect of the pain as mere "discomfort" and assessed his condition as "nonurgent." Chua checked English's vital signs, blood sugar and skin temperature, then walked with English and the older officer to the registration desk.[6][7]

Charlotte Shaw was the registration clerk on duty at the time of English's emergency room visit. English did not respond to her requests for his social security number, date of birth and address.[8] The older officer became increasingly frustrated with English and berated him about being uncooperative and threatened to take him back to the police department.

After several attempts to obtain the necessary information failed,[9] Officer Summerville returned to the patrol car to radio Sergeant Hammond for instructions. Sergeant Hammond advised Summerville to give English another opportunity to provide the requested information and instructed Summerville to return English to the jail if he failed to do so.

---

[5] Chua marked "unknown" in the areas pertaining to medications and drug allergies. Likewise, the notation written in the date of birth category was "unable to get."

[6] Chua offered to get a wheelchair for English, but the older officer insisted English was "faking it" and could walk.

[7] While en route to the registration area, English "started going toward the floor." The officers grabbed him and helped him up. Despite two security officers, Eddie Reed and Dorothy Meeks, suggesting a wheelchair, the older officer refused on grounds that he "was faking it" and "could walk".

[8] Shaw needed the identifying information because the hospital's records system had several patients with the name Willie English; without additional information Shaw could not determine whether any of the existing records pertained to "this" Willie English.

[9] In addition to Ms. Shaw, both Eddie Reed and an ambulance driver attempted to get English to provide the requested information.

4

Officer Summerville returned to the registration area and informed the older officer of Sergeant Hammond's instructions. The older officer became angry, cursed at English and told him that he was not going to spend all night at the hospital with him. After a few more minutes elapsed and English still had not responded to Shaw's questions, the older officer instructed Officer Summerville to get a wheelchair. Officer Summerville did so; the two officers transported English to the patrol car by wheelchair, loaded him into the car and returned to the jail.[10]

Officer Summerville arrived at the police station at 4:30 p.m. Summerville walked English to the elevator and placed him in his cell. Officer Summerville then helped English lie down on a mat on the cell floor. Jailer James Blackshire checked on English again at approximately 5:45. At that time, he determined English was non-responsive and did not appear to be breathing. Blackshire notified Sergeant Hammond and sent for an ambulance to transport English to the Greenwood Leflore Hospital.

English died at 12:46 a.m. on December 26, 2003. An autopsy stated the cause of death as severe pancreatic insufficiency. Additional pathological findings included hypertensive heart disease and coronary artery disease.

Alice English filed suit against Ronnie L. White[11] and the City of Greenwood seeking recovery pursuant to 42 U.S.C. §§ 1983, 1985(3), 1986 and on various state law theories of

---

[10] Shaw maintains she never told the officers she could not register English without the requested information and she never refused to "sign him up."

[11] The Complaint named Chief White in both his individual and official capacities. However, the official capacity claim is tantamount to a claim against the City of Greenwood, already named as a defendant. Roberts v. City of Shreveport, 397 F.3d 287, 291 (5th Cir. 2005). Accordingly, the Court will address only the claim against Chief White in his individual capacity.

liability.[12] [13] The defendants answered, denying all liability. After sufficient opportunity for discovery, the defendants filed a motion for summary judgment. The motion has been fully briefed and the Court is ready to rule.

STANDARD OF REVIEW

Rule 56© of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. John v. State of La. (Bd. Of T. for State C. & U., 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

---

[12] The Complaint also named the Greenwood Police Department as a defendant. However, the police department is not a separate political subdivision. Accordingly it is not amenable to suit. Darby v. Pasadena Police Dept., 939 F.2d 311, 314 (5th Cir. 1991).

[13] Although the Complaint named Leflore County, Leflore County Sheriff's Department, Leflore County Sheriff Ricky Banks, Greenwood-Leflore Hospital and L.V. Archie as defendants, said defendants were dismissed pursuant to Orders entered June 19, 2007, September 17, 2007 and April 18, 2008.

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Phillips Oil Company, v. OKC Corporation, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. Union Planters Nat. Leasing v. Woods, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Topalian, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." John, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a

7

Local Rule of the court mandating such for failure to respond to an opposed motion. Id. at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." In Re Municipal Bond Reporting Antitrust Lit., 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. See also Union Planters Nat. Leasing v. Woods, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (Topalian, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d 406, 410 (5th Cir. 1980).

LEGAL ANALYSIS

Defendants' motion seeks summary judgment on each of the claims enumerated in plaintiff's Complaint. Plaintiff's response concedes defendants' entitlement to judgment as a matter of law as to certain of those claims. For the sake of clarity, the Court will summarize each claim and include a brief explanation of its disposition. The Court will engage in more detailed analysis only where necessary.

Count I sets forth a right of recovery under 42 U.S.C. § 1983 for purported violations of English's Fifth Amendment right to due process, Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment rights to equal protection and substantive and procedural due process. Plaintiff concede defendants' entitlement to judgment as a matter of law with regard to the Fifth Amendment claim.[14] Defendants are likewise entitled to summary judgment on plaintiff's Eighth Amendment claim.[15] Finally, nothing in the plaintiff's Complaint or response to the defendants' dispositive motion remotely supports an equal protection claim. Accordingly, defendants are entitled to dismissal of that claim as well. Plaintiff's Fourteenth Amendment due process claim will be addressed infra.

Count II of the Complaint alleges a right to recover under 42 U.S.C. §§ 1985(3) and 1986 for conspiracy to interfere with civil rights and neglect to prevent same. Plaintiff concedes defendants' entitlement to summary judgment on the § 1985 claim. Likewise, inasmuch as a claim under § 1986 is entirely dependent on the existence of a valid conspiracy claim under § 1985, plaintiffs can have no recovery under § 1986.

Count III reiterates plaintiff's § 1983 claim with an emphasis on failure to train and supervise. The Court will address those aspects of plaintiffs' claim infra.

---

[14] The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor. Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000).

[15] The Eighth Amendment does not apply to pretrial detainees such as English. Scott v. Moore, 85 F.3d 230, 234-35 (5th Cir. 1996). Plaintiff's claim for failure to provide medical treatment is cognizable only under the Due Process Clause of the Fourteenth Amendment.

Counts IV, V and VI set forth state law claims for negligent hiring and retention, failure to discipline,[16] loss of consortium and wrongful death. Those claims were dismissed pursuant to an Agreed Order entered August 28, 2007.

I.   § 1983 Claims Against Chief Ronnie L. White[17]

Fairly read, the constitutional claims against Chief White fall into two categories: 1) failure to provide adequate medical care; and 2) failure to supervise and/or train. The Court will discuss each theory of liability in turn.

   A.   Failure to Provide Medical Care

Pretrial detainees have a right to adequate medical care while incarcerated. Hare v. City of Corinth, 74 F.3d 633, 640 (5th Cir. 1996). In a case involving an episodic act or omission such as the present one, a detainee may recover only upon a showing that "the individual official acted or failed to at with deliberate indifference to the detainee's medical needs." Id. at 648. A government actor is deliberately indifferent only where he "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825 387, 128 L.Ed.2d. 811, 114 S. Ct. 1970 (1994).

---

[16] Even reading plaintiff's Complaint liberally and construing her failure to discipline claim as an alternative theory of liability under § 1983 would prove unavailing for essentially the same reason their other Monell claims: plaintiff is incapable of demonstrating a pattern of complaints by other citizens. "[I]t is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case. Piotrowski v. City of Houston, 237 F.3d 567, 582 (5th Cir. 2001). See also Fraire v. City of Arlington, 957 F.2d 1268, 1279-79 (5th Cir. 1992).

[17] Chief Ronnie L. White is the only individual defendant remaining in the case. Plaintiff's response and memorandum brief in opposition to the defendants' motion requests leave to file an amended complaint naming Jon Summerville and Marvin Hammond as defendants. The magistrate denied a formal motion seeking the same relief by way of an Order entered November 29, 2007. Plaintiff failed to appeal Magistrate Bogen's ruling in a timely fashion. Accordingly, her appeal from that ruling is procedurally barred. Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

10

In the instant case, plaintiff failed to come forward with any evidence to demonstrate culpability on the part of Chief White. White's only discernible involvement with this case was his receipt of a tip from a local pharmacist regarding English's attempt to obtain narcotics with a forged subscription. After dispatching narcotics officers to investigate, Chief White had no further involvement. Because he was not personally involved in the sequence of events which ultimately resulted in English's death on December 26, 2003, Chief White is entitled to summary judgment on plaintiff's claim for failure to provide medical care.

B. Failure to Supervise/Train

Plaintiff also premises liability on Chief White's alleged failure to provide adequate and competent training and/or supervision of those working in and around the jail on December 25, 2003.[18] Inasmuch as supervisory officials cannot be held liable under § 1983 for the actions of subordinates on a theory of vicarious liability, English must show Chief White's conduct resulted in a violation of English's constitutional rights. Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Plaintiff argues Chief White allowed "individual officers to make life of [sic] death determinations regarding the need for medical treatment without providing or requiring these officers to have any training in assessing the medical needs of inmates in emergency situations." Plaintiff's Memorandum of Law at p. 10-11. In addition, she charges Chief White failed to insure that the subordinate police officers followed the written procedures for securing medical treatment for ill inmates.

In order to succeed on a theory of supervisory liability, plaintiff must prove: "1) the supervisor either failed to supervise or train the subordinate official; 2) a causal link exists between

---

[18] Presumably, this is a reference to Office Jon Summerville and "the older officer."

the failure to train or supervise and the violation of the plaintiff's rights; and 3) the failure to train or supervise amounts to deliberate indifference." Id.

Assuming for argument's sake that English can demonstrate a genuine issue of material fact on the first two elements of their claim, summary judgment is nonetheless proper because plaintiff cannot demonstrate the requisite level of culpability on Chief White's part:

> "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. (internal quotation marks and citations omitted). A plaintiff ordinarily must prove "more than a single instance of the lack of training or supervision causing a violation of constitutional rights." Thompson v. Upshur County, 245 f.3d 447, 459 (5th Cir. 2001) (emphasis added). That is, a finding of "deliberate indifference generally requires that a plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation.'" Id. (emphasis added).

The record is devoid of evidence of repeated occurrences of similar incidents sufficient to alert Chief White of the need for additional training in assessing the medical needs of inmates. Plaintiff concedes as much in her memorandum brief in opposition to summary judgment.

Instead, she urges the Court to apply the single-incident exception of Brown v. Bryan County, 219 F.3d 450 (5th Cir. 2000), pet. for reh'g en banc denied, 235 F.3d 944 (5th Cir. 2000). In limited circumstances, a plaintiff who is incapable of establishing a pattern of constitutional violations may prove deliberate indifference by establishing "a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional

rights." McClendon v. City of Columbia, 258 F.3d 432, 442 (5th Cir. 2001).

However, the factual circumstances of this case do not support the application of the single incident exception. The record before the Court reflects that the involved officers attended the local law enforcement academy, received the state mandated law enforcement training, graduated and received certification under Mississippi law as law enforcement officers. Benavides v. County of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). By contrast, Bryan involved a complete failure to provide any training to the deputy who inflicted the constitutional injury on the plaintiff. Brown, 219 F.3d at 450. Moreover, the Fifth Circuit has since recognized "[t]he single incident exception . . . is a narrow one, and one that we have been reluctant to expand. Accordingly, the exception will apply only where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." Burge v. St. Tammany Parish, 336 F.3d 363, 373 (5th Cir. 2003). In view of the foregoing, the Court finds the evidence before the Court insufficient to support a finding of deliberate indifference. Chief White is entitled to judgment as a matter of law on the plaintiff's failure to supervise/train claim.

II.     § 1983 and Municipal Liability Under Monell

In addition to their claims against Chief White, English also seeks recovery against the City of Greenwood. Municipal liability under § 1983 cannot rest solely on respondeat superior. Thus, in order to recover against the City of Greenwood, English must have suffered a constitutional injury as a direct result of a municipal policy or custom. City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 1203 (1989). Stated differently, a municipality cannot be found liable unless: 1) the municipality has an official policy, practice or custom which could subject it to § 1983 liability; the

13

official policy must have caused a constitutional violation; and 3) the official policy must reflect the municipality's deliberate indifference to that injury. Monell v. Dep't. of Social Servs. of the City of New York, 436 U.S. 658, 690-94, 98 S. Ct. 2018 (1978).

Official municipal policy can take one of two forms:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common that well settled as to constitute a custom that fairly represents municipal policy.

Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984).

In the instant case, the only formal policy provisions identified in the record are facially valid.[19] Plaintiff does not claim otherwise. Accordingly, rather than rely on formally promulgated

---

[19] The relevant policies pertaining to inmates in need of medical treatment or medication are as follows:

5. Inmates requiring medical treatment will be carried to the Greenwood Leflore Hospital Emergency Room. The jailer on duty at the time of the request will write an offense report following the transportation of the inmate to the hospital, within a reasonable length of time and turn the offense report in to the jail administrator. If a jailer is not on duty, then the Shift Commander will see to it that an offense report is completed.

6. Inmates taking medicine will [b]e administered their medicine according to directions on said medicine. Inmate's name, date, time and type of medicine taken, and name of jailer or officer dispensing medicine will be entered in the medical log book, which is kept at the dispatcher's desk. No inmate is ever to be given another inmate's medicine. When dispensed, make sure that the inmate has taken the medicine. Under no circumstances will the inmate be allowed to keep medicine unless it has been ordered by his/her doctor. All medicine will be kept by the dispatcher in the dispatch office.

7. Jailers and officers are to report all sickness, accidents, or injuries of inmates to the dispatcher, who in turn shall immediately advise the jail administrator or

municipal policy, plaintiff's claim turns on her ability to demonstrate evidence of custom or practice. She urges "chronic violations of [formal municipal policies] that became the de facto practice of GPD beginning with Chief Ronnie White." However, the record reveals nothing in the way of "chronic violations." A single isolated incident is insufficient to warrant to finding of official custom or practice. Burge, 336 F.3d at 370 (5th Cir. 2003). Absent evidence of a prior pattern of similar behavior, no reasonable trier of fact could find in favor of plaintiffs on their claim against the municipality. The City of Greenwood is entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing facts and analysis, the Court finds the defendants' Motion for Summary Judgment [57] is well-taken and should be granted. A separate judgment will be entered herein in accordance with the provisions of F.R.C.P. 58.

This, the 30th day of July, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

the shift commander. If an inmate becomes ill in jail or suffers an injury requiring medical attention, the inmate will be transported to the hospital for treatment. No inmate is to be incarcerated if medical attention is needed until medical attention has been obtained. The jailer or officer will make an offense report pertaining to the inmate and turn offense report into the jail administrator.

Exhibit L to defendants' Motion for Summary Judgment.